# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARTY TIEZZI, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| MORGAN P. MOLLOY JR., et al., | ) 14-12455-IT |
| Defendants. | ) |

## CORRECTED MEMORANDUM AND ORDER

**TALWANI, D.J.**

Before the court is the pro se complaint of Marty Tiezzi ("Tiezzi") against his former employer, a number of its former or current employees, Tiezzi's former wife, the New England Ophthalmological Society, and President Barack Obama. Tiezzi seeks leave to proceed *in forma pauperis*. Also pending is his third motion for recusal. For the reasons stated below, the court (1) denies plaintiff's motion for recusal; (2) grants his motion for leave to proceed *in forma pauperis*; and (3) dismisses this action.

## I. Background

The complaint contains factual allegations concerning the plaintiff's employment with Allergan Pharmaceuticals ("Allergan") from 1990-1993 and subsequent events. The court summarizes these allegations.

### A. Hiring and Training by Allergan

Plaintiff alleges that in 1990, he applied for a job as a regional sales and marketing

1

manager with Allergan. He was interviewed by defendant Patrick Welch ("Welch"), and during their discussion they each shared some background information about each other: Welch's favorite baseball team was the Chicago White Sox and Tiezzi had worked with the family construction business, which included a woodworking shop. After Tiezzi had accepted employment with the company, he was asked to sign a written contract. The contract identified Marty Piazza--a professional baseball player--instead of Marty Tiezzi as the employee. Based on the personal information shared in the interview and the incorrect name in the contract, the plaintiff concluded that Welch was "involved in some crazy professional baseball deal to use [Tiezzi's] background in wood to help identify and purchase the hardest wood to manufacture baseball bats. Compl. at 3. Because the plaintiff is "not a Communist (and/or identify thief)," he refused to sign the contract. *Id.* at 3-4. The name was corrected, and he proceeded with employment at Allergan.

According to the complaint, during a three-week training in October 1990, Scott Tyler ("Tyler"), another employee started a fight with the plaintiff. Tiezzi picked Tyler up over his head, "body-slammed" into a bed, and demanded that the fight stop. *Id.* at 4. The plaintiff later concluded that defendant Morgan Molloy ("Molloy"), an Allergan employee whose sales area was also in New England, had coached Tyler to start the fight so that the plaintiff's employment with Allergan would be jeopardized.

**B.     Barack Obama's Visit to Boston**

The complaint asserts further that in 1992, "Chicago Politician" Barack Obama was visiting plaintiff's sales territory in Boston, Cambridge, and Brookline. *Id.* at 5-6. Tiezzi, one of his distant relatives, his wife, his district manager, and Allergan's national accounts manager all

2

had connections with the insurance and/or pharmaceutical industries in the Chicago area. The plaintiff sees a connection between the politician's visit to his sales territory and his connections to Chicago and "wonder[s] if the roots of the infamous 'Obama Care' Insurance Plan originated during those 1992 visits to Boston, MA.?" *Id.* at 6.

### C. Allergan Event at the Ritz Carlton

Plaintiff alleges that in or about 1991, he was in charge of a significant promotional event at the Ritz Carlton hotel in Boston. With budgetary concerns in mind, the plaintiff made sure that the per person cost for dinner and alcohol was capped. However, when the event was over and Tiezzi went to settle the account with the hotel, he learned that--without his knowledge or consent--extra alcohol and expensive wine had been ordered and added to the agreed-upon cost. Tiezzi was forced to use his personal credit card to pay part of the bill. He was afraid that he could lose his job over this incident.

### D. Plaintiff's Divorce

The complaint alleges further that in May 1993, the plaintiff and his wife divorced. Although the couple had agreed upon a division of their personal belonging, when moving time came his wife took items that had been designated for Tiezzi. An argument ensued, during which the plaintiff's wife and some family friends threatened him. He filed a police report. Tiezzi notes that two of his friends are "common Catholic Communist Police Officers" and he anticipates that they will "hav[e] a problem" with him because he is Protestant. *Id.* at 8.

### E. Termination of Employment with Allergan

Plaintiff asserts that in September 1993, he was asked to resign from his employment at Allergan, despite his three years of "intense and successful sales and his great rapport with [his]

3

customers and their personnel." *Id.* at 9.

      **F.**      **Development of Intellectual Property and Attempts to Contact Molloy**

The complaint alleges that Tiezzi became permanently disabled in January 1994 and began to receive a Social Security disability benefit of $980 per month. Because he "couldn't perform at the same level that [he] had previously performed," he decided to "create and Register Intellectual property." *Id.* (as in original). He registered a trademark--and later a service mark--with the United States Patent & Trademark Office. In February 2013, Tiezzi decided to sell his intellectual property rights and to offer a commission to anyone who identified a buyer. In this regard, in October 2013, the plaintiff contacted Molloy to see if he wanted to sell Tiezzi's intellectual property. The plaintiff volunteered to drive from his home in Connecticut to Massachusetts to hand deliver a package of materials to Molloy. Instead, Molloy successfully petitioned the Framingham District Court to issue a civil restraining order against Tiezzi and threatened to kill Tiezzi if he came within 50 miles of Molloy. The plaintiff believes that Molloy's conduct is consistent with Tiezzi's concern that Molloy was trying to sabotage him by instructing Tyler to instigate a fight with Tiezzi twenty-three years earlier. The plaintiff concludes that Molloy's conduct is indicative of other actions against him:

> My concern about Morgan Molloy's decision to ignore and deny me are consistent with the staunch Republican Communist tendency to steal Intellectual Property and starting a company with my Service Mark, obtain financing, and rather than communicate with me in order to purchase the rights to use my Service Mark, Morgan Molloy and other criminals will pay to kill me. As a matter of fact, I would testify that my life has been challenged by at least (15) attempts to murder me over the last (19) years.

*Id.* at 10 (as in original).

G.   **Change in Social Security Benefits Claim Number**

According to the complaint, in June 2014, Tiezzi received correspondence from the Social Security Administration ("SSA") and noticed that, for the first time in twenty years, there was a change in his claim number. His claim number had always been followed by the letter "A" but was now followed by the letters "HA." He inquired with the SSA and learned that the "H" signified a disability claim. The plaintiff doesn't understand the addition to his claim number.

## II.   Analysis

### A.   Motion for Recusal

Plaintiff asserts that the court's docket entries for this matter do not properly identify the documents filed in the case and that the undersigned judge therefore is not impartial. The "date filed" column on the docket sets forth the date recorded by the clerk's office for its receipt of documents. The docket text sets forth a shorthand entry for the document. The complete documents are included in their entirety as part of the Court Electronic Records. Tiezzi has identified no misrepresentation by the court. The motion for recusal is denied.

### B.   Motion to Proceed *In Forma Pauperis*

Based upon review of plaintiff's motion for leave to proceed *in forma pauperis*, the court concludes that plaintiff has demonstrated a lack of funds to prepay the filing fee. The court therefore will grant the motion.

### C.   Review of the Complaint

Where a plaintiff is allowed to proceed without prepayment of the filing fee pursuant to 28 U.S.C. § 1915, the court "shall dismiss the case . . . if the court determines that - . . . the action or appeal . . . fails to state a claim on which relief may be granted[] or . . . seeks monetary relief

5

against a defendant who is immune from such relief." *Id.* § 1915(e). In conducting this review, the court liberally construes the complaint because plaintiff is proceeding pro se. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### 1. Rule 8 of the Federal Rules of Civil Procedure

To state a claim for relief, a complaint must, in compliance with Fed. R. Civ. P. 8(a)(2), include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At a minimum, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Calvi v. Knox County*, 470 F.3d 422, 430 (1st Cir. 2006) (quoting *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 66 (1st Cir. 2004)). The plaintiff's obligation to provide the grounds of his claim "requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, "only a complaint that states a *plausible* claim for relief" states a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (emphasis added). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not show that "the pleader is entitled to relief." *Id.* (quoting Fed. R Civ. P. 8(a)(2) in second quotation).

Here, the plaintiff has failed to state a claim upon which relief may be granted. Plaintiff lists seven "crimes" that he asserts are "uncovered" in the complaint: contributory negligence, fraud, conspiracy, identity theft, arbitration and award, slander and libel, and murder. *Id.* at 12. The complaint describes a series of events in connection with Tiezzi's hiring and training by Allergan in 1990, a promotional event at the Ritz-Carlton in or about 1991, a visit by Barack Obama to Boston in 1992, a dispute with his former wife and her family and friends in 1993, the

6

termination of his employment in 1993, a 2013 dispute with his former co-worker, Morgan P. Molloy, Jr., in connection with Tiezzi's intellectual property, and a change after 20 years in Tiezzi's social security claim number in correspondence from the Social Security Administration ("SSA") in 2014. Even if these facts could be proven, Tiezzi has not demonstrated how these facts entitle him to relief under any of the claims listed. Because the complaint does not contain factual allegations from which the court may infer that the defendants are liable for the claims enumerated by the plaintiffs, the pleading does not meet the Rule 8 requirement that a complaint state a plausible claim for relief.

### 2. Statute of Limitations

Moreover, much of the alleged misconduct that Tiezzi describes is not actionable because it occurred decades ago. Although the statute of limitations is an affirmative defense, and Fed. R. Civ. P. 8(a) does not require a plaintiff to plead facts to avoid potential affirmative defenses, a complaint can be dismissed for failure to state a claim if the allegations therein show that relief is barred by the relevant statute of limitations. *See Bock v. Jones*, 549 U.S. 199, 215 (2007). The Massachusetts statutes of limitations applicable to the claims asserted by Tiezzi are either three or six years. *See* M.G.L. ch. 260, §§ 2, 2A, 5B. The court cannot discern any claim arising from the events occurring before 1994 that would not be time-barred. Regardless of the plaintiff's causes of action, any applicable statute of limitations would not allow him to bring claims based on events that occurred over 20 years ago.

### 3. Political Questions and Presidential Immunity

In the section of the complaint labeled "Claims for Relief," Tiezzi also asks that President Obama be removed from office:

> I request and state that the President of the United States (Barak Obama) should resign, be impeached or assassinated for not defending Democracy and instilling the belief in Americans that the Public Office of President of the United States of America become a "Pawn" of Communism. Our freedoms, civil liberties, human rights, and free-market economy has been compromised.

Compl. at 11 (as in original). Tiezzi asserts that his claims "are initiated because of the Political position of Barak Obama." *Id.* at 12 (as in original). Tiezzi's claims concerning President Obama's policies are political questions which are non-justiciable. *See Baker v.* Carr, 369 U.S. 186, 217 (1962). To the extent that Tiezzi is asserting claims against President Obama personally, those claims are barred by the doctrine of presidential immunity. *See Nixon v. Fitzgerald*, 457 U.S. 731, 756 (1982).

### III. Conclusion

Accordingly:

1.  The motion (#11) for recusal is DENIED.

2.  The motion (#2) for leave to proceed *in forma pauperis* is GRANTED.

3.  This motion is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted

**So ordered.**

                                                  /s/ Indira Talwani
                                                  Indira Talwani
                                                  United States District Judge

Dated: November 4, 2014